UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MICHELLE SIMPSON, a/k/a DEIDRE BROWN,

                Plaintiff,

                -against-

COMMISSIONER OF MENTAL HEALTH
SHARON CARPINELLO; KATHLEEN IVERSON,
LYNCH DAVID OR LYNCH KEVIN EXECUTIVE
ADMINISTRATOR, DEPUTY ADMINISTRATOR;
DR. REDDY; MS. TSAI; RENEE ANDERSON;
CLINICAL DIRECTOR WILLIAM FISHER;
MENTAL HEALTH LEGAL SERVICES; and
KIMBERLY BROWN, ESQ.,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

07-CV-2723 (RJD)

DEARIE, Chief Judge.

Plaintiff Michelle Simpson, also known as Deidre Brown, brings this *pro se* action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. The action was filed on April 5, 2007 in the United States District Court for the Southern District of New York ("S.D.N.Y.") and transferred to this Court on June 29, 2007. Plaintiff's application to proceed *in forma pauperis* is granted.

## BACKGROUND

Plaintiff brings this lawsuit seeking to challenge her commitment to Creedmoor Psychiatric Center. She alleges that she was "voluntarilly [*sic*] committed" to the facility on March 8, 2007 after two psychiatrists confirmed that she needed care. (Complaint at 3.) She further alleges that on March 22, 2007 she filed a 72-hour notice requesting that she be released unless a judicial order is before the court. (Id.) She alleges that she was not released within 72 hours and that Defendant Kim Brown, Esq., told her that she would not get a hearing on the issue for two weeks. (Id.) She further alleges that Mental Health Legal Services and medical personnel at Creedmoor have conspired to disregard the rights of patients. (Id.; Complaint at 5.)

Plaintiff argues that these actions violate her rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, New York's Mental Hygiene law § 323.00, and the Americans with Disabilities Act.

Although she disclaims any connection between these facts and this lawsuit, Plaintiff states that "Plaintiff was brought to Creedmore [*sic*] after being jumped by correction officials to wit Plaintiff fought, justifiably to protect herself." (Complaint at 3.) She also indicates that she was confined in the jail ward at Creedmoor. (Complaint at 4.)

Plaintiff seeks $5 million dollars in monetary relief and also seeks declaratory and injunctive relief.

## DISCUSSION

### A. Standard of Review

Title 28, Section 1915(e)(2)(B) of the United States Code requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v.

2

USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

## B. Civil Rights Litigation

Plaintiff alleges that Defendants' actions violated her civil rights. A claim for violations of constitutional rights is cognizable under 42 U.S.C. § 1983 ("§ 1983"). Claims alleging conspiracy or failure to prevent a conspiracy to violate civil rights may be brought pursuant to 42 U.S.C. § 1985(3) and § 1986.[1] In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)).

Section 1983 imposes liability for constitutional deprivations caused by state actors, and cannot be applied to the actions of private individuals. As the Supreme Court has held, "the

---

[1] Sections 1985(3) and 1986 may be invoked to protect against conspiracies to deprive individuals of their constitutional rights. Among other requirements, a § 1985(3) plaintiff must show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Here, Plaintiff has not alleged a deprivation of rights on account of her membership in a protected class, thus she has failed to state a claim for violation of § 1985. See Thomas v. Roach, 165 F.3d 137, 147 (2d Cir.1999). In order to establish a violation of § 1986, a plaintiff must first establish a violation of § 1985 which the § 1986 defendant failed to prevent. Brown v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated upon a valid § 1985 claim.")(quotation marks and citation omitted). As Plaintiff has failed to state a valid claim under these sections, these claims are hereby dismissed.

under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quotations omitted). In particular, court-appointed attorneys do not act under color of state law merely by virtue of their appointment. See Polk County v. Dodson, 454 U.S. 312, 325 (1981) (county public defender does not act under color of state law when performing traditional advocacy functions); Fisk v. Letterman, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005) (holding that a court-appointed attorney is not a state actor, even if employed by the Mental Hygiene Legal Services, a state-funded legal services agency under the direction of the New York State Office of Court administration). Accordingly, all claims against Mental Health Legal Services and Kimberly Brown, Esq. are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Moreover, a § 1983 plaintiff seeking to recover money damages must establish that the named individual defendants were personally involved in the wrongdoing or misconduct complained of. A supervisory official is deemed to have been personally involved only if that official directly participated in the infraction; if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)). Several of the individuals named in the Complaint, including Sharon Carpinello, Kathleen Iverson, and William Fisher, are supervisory officials. Plaintiff has not alleged any direct personal involvement by these individuals, nor has she identified any specific acts or failures to act that may be attributed to any of the other named defendants.

## C. Leave to Amend

Plaintiff alleges that she is being held involuntarily, in violation of state law and her constitutional rights. "An involuntary civil commitment is a 'massive curtailment of liberty,' and therefore cannot permissibly be accomplished without due process of law." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995) (quoting Vitek v. Jones, 445 U.S. 480, 491 (1980)). Involuntary commitment is constitutional, however, if the person is both mentally ill and a danger to himself or others. Rodriguez, 72 F.3d at 1061; see also O'Connor v. Donaldson, 422 U.S. 563, 580 (1975). There is also no Fourth Amendment violation for involuntary hospitalization, "if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993), quoting Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1992).

In this case, Plaintiff's allegations are inconsistent. Although she claims to have been voluntarily committed, she also suggests that she was found to be in need of medical care by two doctors, that she had been in some type of custody prior to being taken to Creedmoor, that she was held in the jail ward at Creedmoor, and that she was committed as a result of her involvement in an altercation with corrections officials. Accordingly, the Court cannot determine her commitment status, whether the requirements of the governing standard for this commitment have been satisfied, or whether she has a protected liberty interest that has been violated and that could serve as the basis for a claim under § 1983. Plaintiff has offered no facts or arguments that would support her additional claims under the Fifth, Sixth, or Eighth Amendments and the Americans with Disabilities Act.

Moreover, as a result of the improper filing in the S.D.N.Y., the subsequent transfer to

this Court, and a series of delays in both courts, a significant period of time has passed since Plaintiff first alleged that her 72-hour hold had been extended for 2 weeks. Plaintiff has not indicated a change in status nor updated her address with the Court.

For these reasons, the Court grants Plaintiff leave to amend her Complaint to indicate the basis for her initial commitment to Creedmoor, the steps she took to challenge that commitment, the procedures that followed, and any additional bases for a claim that her civil rights were violated. Moreover, she should indicate her current commitment or custodial status and whether she is subject to a continuing violation of her constitutional rights. She must also identify how each of the individuals named in the Complaint is responsible for alleged violations of her rights.

## CONCLUSION

Plaintiff shall have thirty (30) days from the date of this Order to file an amended complaint. The amended complaint must be captioned, "Amended Complaint," and shall bear the same docket number as this Order. All further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
Chief Judge

Dated: Brooklyn, New York
September 5, 2007